IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PMG, INC., d/b/a/ PMG MANUFACTURING GROUP,<br><br>    Plaintiffs,<br><br>v.<br><br>LOCKHEED MARTIN IDAHO TECHNOLOGIES COMPANY, et al,<br><br>    Defendants. | Case No. CV-02-539-E-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

The Court has before it two motions filed by Lockheed (for attorney fees and costs) and a motion filed by PMG (for a judgment notwithstanding the verdict or new trial). The motions are fully briefed and at issue. For the reasons expressed below, the Court will (1) deny PMG's motion; (2) award Lockheed $728,618.66 in attorney fees; and (3) award Lockheed $52,646.01 in costs.

## ANALYSIS

In this lawsuit, plaintiff PMG claimed defendant Lockheed breached a

**Memorandum Decision and Order – Page 1**

contract and committed fraud. PMG had entered into a Licensing Agreement with Lockheed to license Lockheed's '588 patent describing a method of remotely deploying a retractable barrier strip to be used by police to deflate the tires of fleeing vehicles. PMG used the patented technology to manufacture and sell barrier strips to police departments.

Later, PMG was sued by Stinger Spike Systems Inc. for infringing Stinger's '373 patent. That patent, Stinger claimed, covered a method of attaching spikes to a rotating shaft with rubberized grommets, precisely the method of attachment used by PMG.

PMG demanded that Lockheed take over the suit pursuant to an indemnity provisions of the License Agreement. Lockheed refused. PMG later settled with Stinger, paying them $279,000. PMG then filed this suit against Lockheed claiming, among other things, that Lockheed's refusal to defend it in the litigation over Stinger's patent, and to indemnify it for its losses in that litigation, was a breach of the License Agreement. PMG also claimed that Lockheed's failure to notify it about the Stinger patent during contract negotiations constituted fraud. Lockheed responded by filing counterclaims against PMG, claiming that it breached the License Agreement by failing to provide liability insurance and pay royalties, among other concerns.

**Memorandum Decision and Order – Page 2**

The case was tried to jury, which rejected PMG's claims of fraud and breach of contract, and awarded Lockheed $1.1 million on its counterclaims. The jury also found that PMG's status as a separate corporation should be disregarded so that Positech International Inc. will be jointly responsible for the damages.

**1. Motion for Judgment or New Trial**

A judgment notwithstanding the verdict "is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "Although the court's ruling on an alternative motion for a new trial involves the exercise of some discretion, a stringent standard applies when the motion is based on insufficiency of the evidence." *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997). A motion will be granted on this ground only if the verdict "is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *Id.*

In the motion now before the Court, PMG challenges first the jury verdict that PMG's corporate status should be ignored. PMG acknowledges that the Court properly instructed the jury that Lockheed, to pierce the corporate veil, must prove that PMG frustrated Lockheed's contractual expectations, and that PMG committed fraud or some equivalent misfeasance. While PMG argues that

**Memorandum Decision and Order – Page 3**

Lockheed submitted no such evidence, the Court disagrees. There was evidence from which a reasonable juror could conclude that PMG frustrated contractual expectations by diverting money to Positech, and then committed fraud or some equivalent misfeasance by lying to Lockheed about this diversion of funds. The Court cannot find that the evidence points to only one result, or that the jury verdict on this issue is against the great weight of the evidence.

PMG also challenges the jury's verdict that PMG failed to prove Lockheed committed fraud. More specifically, PMG asserts that the only reasonable interpretation of the evidence is that Lockheed's failure, during contract negotiations, to disclose the statement of Linda Kilgrow of Stinger that Lockheed's prototype was infringing Stinger's patent was material and a fraudulent omission.

Kilgrow's threat – made in October of 1994 – concerned Stinger's '950 patent. Just weeks before the Licensing Agreement was signed in 1997, Stinger obtained its '373 patent, a "re-issue" of the '950 patent. Testimony showed that neither PMG nor Lockheed was aware of the '373 patent during negotiations over the Licensing Agreement. Lockheed's '588 patent did list Stinger's '950 patent as prior art, and Lockheed's patent counsel Alan Kirsch testified that he examined Stinger's '950 patent and concluded that the claims of Lockheed's '588 patent did

**Memorandum Decision and Order – Page 4**

not read on the '950 patent.

Lockheed official Donna Marts testified that when she displayed the prototype to PMG during contract negotiations, she explained that the spikes and rotating shaft with grommets were purchased from Stinger, and that Lockheed had not done any developmental work on that part of the prototype. There was evidence that PMG had in its possession during negotiations over the Licensing Agreement information on the Stinger products.

From this evidence, a reasonable juror could conclude that Lockheed's failure to reveal a single threat, made years earlier at a trade show, was not material and could not constitute a fraudulent omission. PMG objects, however, pointing to the testimony of Thomas Harrison, Lockheed account representation, that the information on Stinger's threat was material. Yet this ignores Harrison's later testimony that the threat was not material, after he was apprised of the information that PMG had about Stinger's product during negotiations. For all these reasons, the Court cannot find that the evidence points only to the conclusion that Lockheed committed fraud or that the jury verdict is against the great weight of the evidence.

PMG claims next that the only reasonable interpretation of paragraph 9.2 of its agreement with Lockheed is that it was a warranty by Lockheed that PMG's product would not infringe any other patent. The Court disagrees. The Court

**Memorandum Decision and Order – Page 5**

earlier declared this paragraph ambiguous, and hence submitted to the jury the question of the intent of the parties. There was substantial evidence at trial that could lead a reasonable juror to conclude that paragraph 9.2 only covered patents, not PMG's product. For example, Lockheed's Alan Kirsch testified that during contract negotiations, he told PMG's counsel that Lockheed would not warrant PMG's product because Lockheed had no control over PMG's manufacturing process. The Court cannot find either that the evidence points to only the interpretation urged by PMG or that the jury verdict is against the great weight of the evidence.

## 2. Petition for Attorney Fees

Lockheed seeks $739,407.66 in attorney fees. The Court had earlier awarded the sum of $58,273.47 in fees incurred by Lockheed in preparing for the first trial date that was continued on the eve of trial at PMG's request. The Court did not, however, enter judgment at that time, reserving a decision on the final amount of fees until the end of the case. Lockheed has now made a comprehensive request that folds in the prior fee award, and the Court will examine the request as a whole.

There is no dispute that Lockheed is entitled to attorney fees under Idaho Code § 12-120(3) and the Court so finds. PMG objects to the amount on a number

**Memorandum Decision and Order – Page 6**

of grounds.

First, PMG claims that Lockheed failed to provide sufficient detail on the fees it incurred. The Court disagrees. The affidavits submitted by Lockheed in connection with its petition contain exhibits running to over a hundred pages, detailing each charge and the reason it was incurred. The Court finds this detail sufficient.

PMG complains that the Westlaw charge of $12,345.66 is not sufficiently detailed so that the Court can discern whether it related to the litigation. The Court disagrees. This charge represents the Westlaw expenses for Lockheed over the full five-year period of this litigation. During that time, Lockheed had to gear up for trial twice, as the first trial date was extended at PMG's request on the eve of trial after substantial effort had been expended to prepare for trial. Given these circumstances, the Court needs no more detail to find that this charge is reasonable.

PMG notes that several of the billing entries, totaling $10,789 are redacted to preserve attorney client privilege. Thus, the Court cannot determine why these fees were incurred. Accordingly, these fees cannot be awarded and the Court will back them out of the total figure awarded.

While PMG acknowledges that the work of paralegals may be included in the fee computation, PMG argues that Lockheed cannot charge for clerical or

**Memorandum Decision and Order – Page 7**

secretarial work. PMG points out that much of the work of Lockheed's paralegals involved indexing documents, reviewing documents for key terms, and organizing materials, all of which PMG characterizes as secretarial in nature.

The Court disagrees. This case was complex and lengthy, requiring an expertise in document management that went well beyond that possessed by the typical clerk or secretary. There is no dispute that each of the persons billed out by Lockheed for these tasks was in fact a paralegal. Given the intensive document management tasks that had to be done, the work of the paralegals demanded their expertise and their fees are compensable.

PMG objects to the billing for patent counsel Edgar Cataxinos, arguing that he was unnecessary since Lockheed had its own patent counsel, Alan Kirsch. However, Kirsch is not a trial attorney and was an important witness in the case. The expertise of Cataxinos was needed due to the patent-related nature of this case. While PMG also objects to his hourly rate, noting that it is much higher than that of co-counsel, this argument ignores the fact that Cataxinos is a licensed patent attorney and hence able to command a higher hourly figure. The Court finds his hourly wage reasonable.

PMG objects to Lockheed including travel time of its counsel in its billings, arguing that travel was unnecessary. The travel was generally from Boise to

**Memorandum Decision and Order – Page 8**

Pocatello or Utah to Pocatello.  PMG argues that since Lockheed determined the venue of the trial, it is not entitled to those fees.  However, Lockheed did nothing more than exercise its legal rights, and cannot be penalized for that in the fee award.

In conclusion, the Court finds that Lockheed is entitled to attorney fees under Idaho Code § 12-120(3).  This was a complex case, zealously advocated over a five-year period by excellent counsel on both sides.  The hourly rates charged by Lockheed and the total hours expended are reasonable under these circumstances, except for those billings where the descriptions were redacted.  After backing out $10,789 from Lockheed's request due to the redacted billings, the Court finds that the sum of $728,618.66 is reasonable in every respect.

**3.     Cost Bill**

The Clerk awarded costs in the sum of $26,899.40 for deposition fees and witness fees.  PMG challenged the Clerk's award by filing a motion to retax costs.  PMG argues that the cost of providing an e-transcript along with the hard copy is not recoverable under Rule 54(b).  This is the result in some cases.  *See, e.g., Klayman v. Freedom's Watch, Inc.*, 2008 WL 4194881 (S.D.Fla Sept. 12, 2008) (disallowing e-transcript cost of $22.50); *Bosch v. Ball-Kell*, 2007 WL 2994085 (C.D.Ill. Oct. 11, 2007) (disallowing e-transcript cost of $35).  Nevertheless, in this

**Memorandum Decision and Order – Page 9**

case, Lockheed's counsel represented to the Court that the reporters offer e-transcripts "at nominal or no cost." *See Lockheed's Brief* at p. 3. Given that, the Court finds no reason to reduce the award by the nominal or nonexistent cost of the e-transcripts.

PMG also complains that the cost of sales tax should be backed out. The Court disagrees as that is part of the cost of the deposition transcript. While PMG has other complaints, the Court finds that the Clerk's award must be affirmed.

Lockheed filed a separate petition for taxation of costs in the sum of $52,646.01, addressing matters not submitted in the petition just discussed. This separate petition contained a request for the sum of $19,205.67, previously awarded by the Court in connection with granting PMG's request to continue the initial trial setting. At that time, the Court did not enter a Judgment, deciding instead to wait until the case was over before making any award. The Court finds it now appropriate to award that sum and will grant Lockheed's petition to that extent.

Of the remaining costs sought by Lockheed, the largest segment is $27,041.59 incurred for third-party photocopying services related to document discovery and trial exhibit preparation. While PMG claims that it is unclear whether these copies were "necessarily obtained for use in the case" as required by

**Memorandum Decision and Order – Page 10**

28 U.S.C. § 1920, Lockheed's counsel represented to this Court in his affidavit that the copies were for used for that purpose. *See Oberrecht Affidavit* at ¶ 5. That is sufficient.

The Court rejects PMG's other challenges, and finds that the requested costs are allowable and reasonable.

### 4. Conclusion

The Court will issue a separate Judgment as required by Rule 58(a).



DATED: **September 30, 2008**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 11**